FOR PUBLICATION

## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. THOMAS & ST. JOHN

|  |  |
|---|---|
| HCB, LLC and SIMPLE SOLUTION, LLC, | ) ) ) ) |
|  | ) |
| Plaintiffs, | ) |
|  | ) |
| v. | ) |
|  | ) |
| OVERSEE.NET, | ) |
|  | ) |
| Defendant. | ) |
| _____ | ) |

Civil No. 2007-29

ATTORNEYS:

**A. Jennings Stone, Esq.**
St. Thomas, U.S.V.I.
        *For the plaintiffs,*

**Justin K. Holcombe, Esq.**
St. Thomas, U.S.V.I.
        *For the defendant.*

### MEMORANDUM OPINION

**GÓMEZ, C.J.**

Before the Court is the motion of the defendant, Oversee.net, to dismiss the above-captioned matter for lack of jurisdiction. Additionally, Oversee.net moves to dismiss the case on *forum non conveniens* grounds.

## I.  FACTS

HCB, LLC ("HCB") is a Delaware limited liability company, with its principal place of business in the U.S. Virgin Islands. Simple Solutions, LLC ("Simple Solutions") (together with HCB, the "Plaintiffs") is a Virgin Islands limited liability company,

with its principal place of business in the U.S. Virgin Islands.
Oversee.net is a California Corporation, with its principal place
of business in California. DomainSponsor is a division of
Oversee.net.

HCB is the owner of approximately 700,000 internet domain
names. In or about September 2006, HCB initiated negotiations
with DomainSponsor through its agent, Simple solutions, to secure
a domain monetization agreement ("the Agreement").[1] Specifically,
on September 30, 2006, Jeanne Hudson ("Hudson"), a financial
contact for Simple Solutions, wrote an email to Ron Sheridan
("Sheridan") of DomainSponsor inquiring about internet domain
name monetization services offered by Oversee.net. Hudson at all
relevant times was located in the Virgin Islands. (Hudson Decl.
1, ¶ 3, Aug. 19, 2009.) On October 31, 2006, in response to a
request from Sheridan, Hudson emailed contact information for
Simple Solutions to Oversee.net. This contact information listed
a St. Thomas, U.S. Virgin Islands address for Simple Solutions.
In that email, Hudson reminded Sheridan, "[k]eep in mind, we are
on [A]tlantic [S]tandard [T]ime, hence a four hour difference."
(Hudson Decl. 1-2, ¶ 6, Aug. 19, 2009.) Hudson also provided

---

[1] Domain monetization is a process in which advertisements are
placed on "parked" domain names in order to generate revenue for both the
party that owns the domain and the party that places the advertisement. A
"parked" domain name is one that is owned, but that does not have content on
it. When an internet user visits the "parked" domain name, they are shown
advertisements provided by search engines and other providers of pay-per-click
advertising. These advertisers pay the domain monetization specialists, who in
turn pay the owner of the "parked" domain name.

Sheridan with bank wire transfer instructions for Simple

Solutions' Virgin Islands bank account.  The signature that

appeared at the bottom of Hudson's emails contained an address

indicating that Hudson was located in St. Thomas.

Oversee.net negotiated the terms of the Agreement with

Jeff Baron ("Baron"), a representative of Simple Solutions. Baron

was located in Texas at the time of the negotiation.  A draft of

the Agreement was then sent to Hudson in the Virgin Islands.

On November 13, 2006, the Agreement was executed on behalf

of HCB and Simple Solutions by Dennis Kleinfeld ("Kleinfeld"),

manager of HCB and Simple Solutions. Kleinfeld executed the

Agreement in Barbados. (Armstrong Decl. 2-3, ¶ 13, July 30,

2007.) On November 14, 2006, Armstrong executed the Agreement on

behalf of Oversee.net.  Armstrong was in California at the time.

(Hudson Decl. 3, ¶ 15, Aug. 19, 2009.)

Pursuant to the Agreement, DomainSponsor agreed to place

internet websites containing advertising links at each of HCB's

domain names.  Revenue was to be derived from internet users

clicking on the advertising links.  Under the terms of the

Agreement, DomainSponsor agreed to pay Simple Solutions, as agent

for HCB, a commission for each internet user that clicked on the

links.  The commission was to be paid every two weeks.

Simple Solutions provided Oversee.net with a Virgin Islands mailing address for FirstBank, Virgin Islands. Thereafter, between November 21, 2006, and December 22, 2006, Oversee.net made four wire transfers of funds into Simple Solutions' bank account at FirstBank, Virgin Islands. The receipt for the wire transfer of funds indicated that funds were sent through FirstBank, Puerto Rico. (Pl.'s Resp. To Df.'s Mot. Ex. A 5.)

On November 30, 2006, Hudson emailed Sheridan and asked him to change the administrative contact information for Simple Solutions to make Hudson the contact person. The address that Hudson provided was in the Virgin Islands. Hudson thereafter received a reply email stating that her requested changes had been made. (Hudson Decl. 3, ¶ ¶ 17-18, Aug. 19, 2009.)

On February 12, 2007, HCB and Simple Solutions commenced this action against Oversee.net, alleging that it has refused to pay commissions owed under the Agreement.

Oversee.net now moves to dismiss for lack of personal jurisdiction.[2]

---

[2] Technically, Oversee.net's motion to dismiss asserts a challenge to this Court's subject matter jurisdiction over this matter as well as to this Court's personal jurisdiction over Oversee.net. It argued that the face of the complaint did not reveal the citizenship of the parties for purposes of establishing diversity jurisdiction under 28 U.S.C. § 1332 ("Section 1332"). However, subsequent to the filing of the motion, the plaintiffs were granted leave to amend their complaint to address Oversee.net's concern with respect to citizenship. Now, the First Amended Complaint clearly reveals that the

## II.  **DISCUSSION**

**A.**  **Personal Jurisdiction**

Once a defendant has moved to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) ("Rule 12(b)(2)"), the plaintiff bears the burden of proving by a preponderance of the evidence that jurisdiction is proper. *See Dayhoff, Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996). "[W]hen the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a *prima facie* case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Miller Yacht Sales, Inc. v. Smith,* 384 F.3d 93, 97 (3d Cir. 2004); *see also O'Connor v. Sandy Lane Hotel Co., Ltd.,* 496 F.3d 312, 317 (3d Cir. 2007) (explaining that, because the district court did not conduct a hearing on the Rule 12(b)(2) motion, the plaintiff was only required to make a *prima facie* showing of personal jurisdiction).

To make a *prima facie* showing of personal jurisdiction, the plaintiff must "establish[] with reasonable particularity sufficient contacts between the defendant and the forum state." *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217,

---

parties are diverse in citizenship.  Furthermore, the parties agree that the amount in controversy exceeds $75,000.  Thus, subject matter jurisdiction is appropriate under Section 1332.

1223 (3d Cir. 1992).

> A Rule 12(b)(2) motion . . . is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies. Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence. . . . [A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of *in personam* jurisdiction. Once the motion is made, plaintiff must respond with actual proofs, not mere allegations.

*Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984)); *Patterson by Patterson v. F.B.I.,* 893 F.2d 595, 604 (3d Cir. 1990); *see also United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 619 (1st Cir. 2001) ("The *prima facie* showing must be based upon evidence of specific facts set forth in the record . . . [and] go beyond the pleadings and make affirmative proof") (internal quotations omitted); *Meier ex rel. Meier v. Sun Intern. Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002) ("A *prima facie* case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict") (internal quotations omitted).

To determine if personal jurisdiction is proper, the Court must assess: (1) whether jurisdiction is authorized by the forum's long-arm statute and (2) whether the exercise of personal

jurisdiction over the defendant would comport with due process

under the United States Constitution, which requires that the

defendants have certain minimum contacts with the forum.

*Unlimited Holdings, Inc. v.Bertram Yacht, Inc.,* 48 V.I. 941, 944

(D.V.I. 2007); *see also Fin. Trust Co. v. Citibank, N.A.*, 268 F.

Supp. 2d 561, 566 (D.V.I. 2003) (citing *Int'l Shoe v. Washington*,

326 U.S. 310, 90 L.Ed. 95, 66 S.Ct. 154 (1945)).

The Virgin Islands long-arm statute provides:

> (a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's
>
> > (1) transacting any business in this territory;
> >
> > (2) contracting to supply services or things in this territory;
> >
> > (3) causing tortious injury by an act or omission in this territory;
> >
> > (4) causing tortious injury in this territory by an act or omission outside this territory if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this territory;
> >
> > (5) having an interest in, using, or possessing real property in this territory; or
> >
> > (6) contracting to insure any person, property, or risk located within this territory at the time of contracting.

       (7) causing a woman to conceive a child, or
       conceiving or giving birth to a child; or

       (8) abandoning a minor in this Territory.

       (b) When jurisdiction over a person is based
       solely upon this section, only a claim for relief
       arising from acts enumerated in this section may
       be asserted against him.

V.I. CODE ANN. tit. 5. § 4903 (1997).  This Court has

interpreted the statute to apply as widely as constitutional

requirements permit, consistent with the intent of the

legislature. *See Urgent v. Tech. Assistance Bureau, Inc.*, 255 F.

Supp. 2d 532, 534-36 (D.V.I. 2003) ("[T]he Virgin Islands'

Legislature likely intended the reach of the Virgin Islands'

long-arm statute to be coextensive with the exercise of personal

jurisdiction permitted by the due process clause."); *see also*

*Unlimited Holdings, Inc.,* 48 V.I. at 945 (noting the parallel

between the long-arm statute and the due process requirements of

the constitution).

     Due process requires that a foreign defendant have minimum

contacts with the forum.[3] *Burger King Corp. v. Rudzewicz*, 471

U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

Additionally, "subjecting the defendant to the court's

jurisdiction [must] comport[ ] with 'traditional notions of fair

play and substantial justice.'" *Pinker v. Roche Holdings, Ltd.*,

292 F.3d 361, 369 (3d Cir. 2002) (quoting *Int'l Shoe*, 326 U.S. at

316). Under this standard, "jurisdiction is proper if the

defendant has taken 'action . . . purposefully directed toward

the forum State.'" *Id.* at 370 (quoting *Asahi Metal Indus. Co.,

Ltd. v. Super. Ct. of Cal.*, 480 U.S. 102, 112, 107 S.Ct. 1026, 94

L.Ed.2d 92 (1987)).

A plaintiff can meet his burden of showing minimum contacts

in one of two ways: by establishing either specific or general

jurisdiction over a defendant. *Paradise Motors, Inc. v. Toyota de

Puerto Rico, Corp.*, 314 F. Supp. 2d 495, 498 (D.V.I. 2004).

General jurisdiction is based upon the defendant's "continuous

and systematic" contacts with the forum and exists even if the

plaintiff's cause of action arises from the defendant's non-forum

---

[3] The Revised Organic Act incorporates by reference the fifth amendment
and the second sentence of section I of the fourteenth amendment, the due
process clause. 48 U.S.C. § 1561 (1976). In addition, Congress enacted a Bill
of Rights for the territory, § 3 of the Revised Organic Act, which extends the
federal constitution to the fullest extent possible to the Virgin Islands, as
an unincorporated territory of the United States. *Id. See also In re Brown*,
439 F.2d 47, 50-51 (3d Cir. 1971). Thus, the Organic Act requires the same
due process analysis that would be utilized under the federal constitution.
*See also Gov't of the V.I. v. Bodle*, 427 F.2d 532, 533 n. 1 (3d Cir. 1970).

related activities. *See Vetrotex Certainteed Corp. v. Consol.*
*Fiber Glass Prod. Co.*, 75 F.3d 147, 151 n. 3 (3d Cir.1996)
(citations omitted). In contrast, specific jurisdiction is
present only if the plaintiff's cause of action arises out of a
defendant's forum-related activities, such that the defendant
"'should reasonably anticipate being haled into court'" in that
forum. *Id*. at 151 (quoting *World-Wide Volkswagen Corp. v.*
*Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490
(1980)).

**B.** ***Forum Non Conveniens***

According to the Supreme Court of the United States, "the
common-law doctrine of *forum non conveniens* 'has continuing
application [in federal courts] only in cases where the
alternative forum is abroad,' and perhaps in rare instances where
a state or territorial court serves litigational convenience
best." *Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping*
*Corp.*, 549 U.S. 422, 430, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007)
(quoting *American Dredging Co. v. Miller*, 510 U.S. 443, 449, n.2,
114 S.Ct. 981, 127 L.Ed.2d 285 (1994)). As the Supreme Court has
explained, "[f]or the federal-court system, Congress has codified
the doctrine and has provided for transfer, rather than
dismissal, when a sister federal court is the more convenient
place for trial of the action." *See id.*; *see also* 28 U.S.C. §

1404(a) ("For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.").

Under the doctrine of *forum non conveniens*, the Court has discretion to dismiss a case "when an alternative forum has jurisdiction to hear [the] case, and . . . trial in the chosen forum would establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience, or . . . the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems." *American Dredging*, 510 U.S. at (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)). The United States Court of Appeals for the Third Circuit has held that, when evaluating *forum non conveniens* questions, "the district court must balance the relevant public and private interest factors and determine whether the balance of these factors favors dismissal of the case." *Windt v. Qwest Communs. Int'l, Inc.*, 529 F.3d 183, 192 (3d Cir. 2008). These public and private factors include the ease of access to evidence, the availability of witnesses, and related litigation pending in other jurisdictions.

Dismissal on grounds of *forum non conveniens* "reflects a court's assessment of a 'range of considerations, most notably the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality.'" *Sinochem Intern. Co. Ltd.*, 549 U.S. at 429 (quoting *Quackenbush v. Allstate Ins.* Co., 517 U.S. 706, 723, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) (citations omitted)).  The Supreme Court of the United States has characterized *forum non conveniens* as, "essentially, 'a supervening venue provision, permitting displacement of the ordinary rules of venue when, in light of certain conditions, the trial court thinks that jurisdiction ought to be declined.'" *Id.* (quoting *American Dredging*, 510 U.S. at 453).

A defendant invoking the doctrine of *forum non conveniens* bears a heavy burden in opposing the plaintiff's chosen forum. *See id.* at 430. *See also Windt* 529 F.3d at 192 ("A defendant seeking dismissal on *forum non conveniens* grounds must show that the balance of the public and private factors 'tips decidedly in favor of trial in the foreign forum.'") (quoting *Lacey v.Cessna Aircraft Co.*, 932 F.2d 170, 180 (3d Cir. 1991)).  However, when the plaintiff's choice of forum is not its home forum, "the presumption in the plaintiff's favor 'applies with less force,' for the assumption that the chosen forum is appropriate is in

such cases 'less reasonable.'" *Id.* (quoting *Piper Aircraft Co.*,

454 U.S., at 255-56).

## III. <u>ANALYSIS</u>

### A. Personal Jurisdiction

The Court has not held a hearing on Oversee.net's motion to

dismiss for lack of personal jurisdiction.  The Plaintiffs'

burden is therefore limited to a *prima facie* showing.[4]

To state a *prima facie* case of personal jurisdiction, the

Plaintiffs must establish with reasonable particularity that

Oversee.net falls within the provisions of the Virgin Islands

long-arm statute, and that the requirements of due process are

satisfied. *See Unlimited Holdings, Inc. v. Bertram Yacht, Inc.,*

48 V.I. 941, 945 (D.V.I. 2007); *Fin. Trust Co.*, 268 F. Supp. 2d

at 566.

The Court will first address the long-arm statute

requirement and then turn to the due process requirement.

### 1. Virgin Islands Long-Arm Statute

The Plaintiffs contend that personal jurisdiction over

---

[4]     Neither party requested a hearing. *See, e.g., Bachmann Software & Servs. v. Intouch Group, Inc.*, Civ. No. 08-2025, 2008 U .S. Dist. LEXIS 55719, at *16 (D.N.J. July 21, 2008) (noting that "no party has requested an evidentiary hearing" and thus that "the plaintiff must make a prima facie showing of personal jurisdiction") (unpublished).

Oversee.net is proper under Section (a)(1) of the long-arm

statute providing for jurisdiction over non-resident defendants

("Section(a)(1)").[5]  Section (a)(1) applies to entities

"transacting business" in the territory. *See* 5 V.I.C. §

4903(a)(1).

"Transacting business is a term of art which means less than

doing business but more than performing some inconsequential act

within a jurisdiction. . . . [T]ransacting business requires a

defendant to engage in some type of purposeful activity within

the territory." *Hendrickson v. Reg O Co.,* 17 V.I. 457, 462-63

(D.V.I. 1980) *aff'd,* 657 F.2d 9 (3d Cir. 1981). "[T]he term

'transacting business,' 'can be only a single act which in fact

amounts to the transaction of business within a state (or

territory).'" *Guardian Ins. Co. v. Bain Hogg Int'l Ltd.*, Civ. No.

1996-180, 2000 U.S. Dist. LEXIS 17184, 2000 WL 1690315, at *8

(D.V.I. Oct. 26, 2000).  "Thus, it is enough that there is a

contract with a Virgin Islands resident and the object of that

contract is to be performed, even if only in part, in the

Virgin Islands." *Id.*

---

[5]     Oversee.net is not a resident of the Virgin Islands. Oversee.net
is not authorized to do business in the territory. It  maintains no property,
offices, employees, agents, or "direct marketing in the Virgin Islands."
(Armstrong Decl. 4, ¶ 25, July 30, 2007.)

Here, the evidence in the record shows that Oversee.net entered into an agreement with entities located in the Virgin Islands. That Agreement was negotiated, at least in part, in the Virgin Islands. Representatives of Oversee.net repeatedly corresponded via email with Hudson, whose email signature made clear that she was located in the Virgin Islands. Hudson was the administrative contact person for Simple Solutions in connection with the Agreement. Finally, over the course of approximately one month, Oversee.net made four wire transfers of funds generated pursuant to the Agreement into Simple Solutions' Virgin Islands bank account. Those deposits totaled approximately $500,000. (Hudson Decl. 3, ¶¶ 21-23, Aug. 19, 2009.)

The existence of the Agreement in this case alone is insufficient to establish that Oversee.net engaged in purposeful activity in the Virgin Islands such that it could be considered to have transacted business. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."). However, as the United States Court of Appeals for the Third Circuit has explained,

> a contract is typically an intermediate step
> between past negotiations and future

> transactions, and *Burger King* instructs that "it is these factors-prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing-that must be evaluated in determining whether the defendant purposefully established minimum contacts with the forum."

*Budget Blinds, Inc. v. White*, 536 F.3d 244 (3d Cir. 2008)

(quoting *Burger King,* 471 U.S. 479).

Here, the fact that the Agreement between Simple Solutions and Oversee.net was negotiated at least in part by Hudson in the Virgin Islands weighs toward a finding that Oversee.net transacted business in the Virgin Islands.  Furthermore, Oversee.net's repeated email correspondence with Hudson in the Virgin Islands regarding the Agreement, and its several payments made into Simple Solutions' Virgin Islands bank account convince the Court that Oversee.net "transacted business" in the Virgin Islands within the meaning of the long-arm statute. *See, e.g., Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 332 (3d Cir. 2009) (concluding that powerboat purchasers satisfied the "transacting business" requirement of the Virgin Island's long-arm statute by alleging that, during the process of negotiating the sale of a powerboat, the seller exchanged phone calls, faxes, and e-mails with the purchasers while they were in the Virgin Islands); *Guardian Ins. Co. v. Bain Hogg Intern. Ltd.,* 2000 WL 1690315, at *3 (D.V.I. Oct. 26, 2000) (holding that the

defendant "transacted business" for purposes of Section (a)(1) because it had a contract with a Virgin Islands resident and made payments under the contract in the territory) (unpublished).

In the instant action, the Plaintiffs assert a claim based on Oversee.net's alleged repudiation and breach of the Agreement which it had with Simple Solutions. Such a claim clearly arises from the parties' negotiation of and payments made under the Agreement. Accordingly, the Court finds that the Plaintiffs have made a *prima facie* showing that jurisdiction over Oversee.net is proper under Section (a)(1) of the long-arm statute.

**2. Due Process**

The Plaintiffs must still demonstrate that the exercise of jurisdiction over Oversee.net is consistent with the Due Process Clause of the Constitution. The Plaintiffs seek to show that specific jurisdiction exists over Oversee.net.

The determination of whether a court may exercise specific jurisdiction over a defendant is claim-specific, and is governed by a three-part inquiry. *See O'Connor,* 496 F.3d at 317; *Remick v. Manfredy*, 238 F.3d 248, 255-56 (3d Cir. 2001). First, the Court asks whether Oversee.net purposefully directed its activities at the Virgin Islands. While "[i]t is not significant that one or the other party initiated the relationship," *GE v. Deutz AG*, 270 F.3d 144, 151 (3d Cir. 2001), the "unilateral activity of those

who claim some relationship with a nonresident defendant" is not enough to sustain the exercise of specific jurisdiction. *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

The evidence in the record indicates that Oversee.net actively sought to negotiate the Agreement with Simple Solutions, a Virgin Islands resident. The Agreement was partially negotiated by Hudson, who was located in the Virgin Islands at the time of such negotiation. Furthermore, Oversee.net engaged in continued email correspondence with Hudson throughout the negotiation process and after the Agreement was executed. Oversee.net also deposited large sums of money due under the Agreement into Simple Solutions' Virgin Islands bank account. (Pl.'s Resp. To Df.'s Mot. Ex. A 5) In the Court's view, such conduct constitutes purposeful availment of the privilege of conducting activities in the Virgin Islands such that Oversee.net could reasonably expect to be haled into court here. *See Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998) (finding purposeful availment where "a nonresident defendant transacts business by negotiating and executing a contract via telephone calls and letters to a resident of the forum state").

The Court next considers whether the Plaintiffs' claims against Oversee.net "arise out of or relate to" one of

Oversee.net's forum-related activities. *Helicopteros Nacionales*

*de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, 104 S.Ct. 1868, 80

L.Ed.2d 404 (1984).  The Plaintiffs' claims against Oversee.net

for failure to pay commissions allegedly due under the Agreement

clearly arise from Oversee.net's activities in the Virgin

Islands, since its negotiation, correspondence, and payments

relating to the Agreement all took place in the Virgin Islands.

Finally, the Court must ensure that the exercise of

jurisdiction "comport[s] with fair play and substantial justice."

*Burger King*, 471 U.S. at 476 (quotation omitted).  To that end,

the Court considers:

> the burden on the defendant, the forum State's
> interest in adjudicating the dispute, the
> plaintiff's interest in obtaining convenient and
> effective relief, the interstate judicial
> system's interest in obtaining the most efficient
> resolution of controversies, and the shared
> interest of the several States in furthering
> fundamental substantive social policies.

*Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141, 150 (3d Cir.

1992) (quotation omitted).  The burden is on the defendant to

satisfy this aspect of the due process analysis. *Mellon Bank*, 960

F.2d at 1226.

Oversee.net has not explicitly articulated any argument to

show that defending itself in the Virgin Islands presents any

burden whatever.  In the Court's view, "[t]his is not a case

where a severe burden is placed on an alien defendant.... Nor
does this case involve one isolated occurrence where the
defendant had no connection with the forum state[.]" *Mesalic*, 897
F.2d at 702. "No claims of exorbitant travel expenses,
unavailability of evidence, drains on judicial resources or
countervailing state interests have been made." *Pennzoil Prods.
Co. V. Colelli & Assocs.*, 149 F.3d 197, 208 (3d Cir. 1998).

Furthermore, Oversee.net has negotiated, executed, and
performed an Agreement, pursuant to which it agreed to provide
domain monetizing services for a Virgin Islands resident. The
complaint in this matter alleges that Oversee.net failed to make
payments as required under the Agreement, and as a result, owes
the Plaintiffs damages. The Virgin Islands therefore has a
substantial interest in litigating the Plaintiffs' claims. *See
McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct.
199, 2 L.Ed.2d 223 (1957) (noting that states have a "manifest
interest in providing effective means of redress for its
residents").

Considering these several factors, the Court finds that the
exercise of jurisdiction over Oversee.net accords with
traditional notions of "fair play and substantial justice," at
least at this stage of this litigation.

Accordingly, the Court will deny Oversee.net's motion to dismiss on personal jurisdiction grounds.[6]

## B.   *Forum Non Conveniens*

Oversee.net also contends that this case should be dismissed on grounds of *forum non conveniens*.  It contends that California is a more convenient location for litigation.[7]

Given the Supreme Court's articulation of *forum non conveniens* as applicable "'only in cases where the alternative forum is abroad,' and perhaps in rare instances where a state or territorial court serves litigational convenience best," Oversee.net has a heavy burden to meet. *Sinochem Intern. Co.*

---

[6] Oversee.net also argues that dismissal is appropriate under Federal Rule of Civil Procedure 4(k)(2) ("Rule 4(k)(2)"), which provides:

> For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:
>
> > (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
> >
> > (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Fed. R. Civ. P. 4(k)(2).  Here, however the Plaintiffs do not assert any claims arising under federal law.  As such, Rule 4(k)(2) is inapplicable.

[7] "In general, a transfer of venue is made pursuant to 28 U.S.C.S. 1404(a) which provides for the convenience of the parties and witnesses, in the interest of justice..." *Clisham Management, Inc. v. American Steel Bldg. Co.*, 792 F. Supp. 150, 157 (D. Conn. 1992) (citations omitted). Oversee.net does not seek relief pursuant to that provision. Rather, it relies solely on the doctrine of *forum non conveniens*.  Even if it did seek relief pursuant to the transfer of venue statute at 28 U.S.C.S. 1404(a), Oversee.net has failed to show that transfer to California would enhance the convenience of the parties, enhance the convenience of the witnesses, and be in the interest of justice.

*Ltd.*, 549 U.S. at 430 (quoting *American Dredging*, 510 U.S., at 449, n. 2)). Since California is not a foreign jurisdiction, Oversee.net must demonstrate that the balance of public and private factors strongly favors dismissal.

Balancing public and private factors requires the Court to evaluate a number of factors. These factors include cost, ease of access to evidence, the availability of witnesses, and related litigation pending in other jurisdictions. Oversee.net has not put forth specifics demonstrating that defending itself in the Virgin Islands presents any special burden. Oversee.net has made "[n]o claims of exorbitant travel expenses, unavailability of evidence, drains on judicial resources or countervailing state interests ...." *Pennzoil Prods.*, 149 F.3d at 208. In sum, it has failed to demonstrate that public or private factors strongly favor dismissal.

Considering the balance of public and private factors and the limitations placed on the scope of the doctrine of *forum non conveniens* by the Supreme Court, the Court finds that Oversee.net has not met its burden.

## V.   <u>CONCLUSION</u>

Accordingly, the motion to dismiss will be **DENIED.** An appropriate

order will follow.

S\\_____
                    **Curtis V. Gómez**
                    **Chief Judge**